UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KRISTEN A.,

               Plaintiff,

      v.                                   **DECISION AND ORDER**

                                                    20-CV-875S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

      1.      Plaintiff Kristen A.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her applications with the Social Security Administration on July 9, 2014. Plaintiff originally alleged disability beginning July 1, 2011 (but Plaintiff later sought to amend that date to January 16, 2012), due to obsessive/compulsive disorder, bipolar disorder, and post-traumatic stress disorder. Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

      3.      On November 18, 2016, ALJ Timothy McGuan held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Michele Erbacher appeared

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

and testified.  (R.[2] at 59-89, 115.)  At the time of the hearing, Plaintiff was 31 years old, with a limited education but had no past relevant work (R. at 19, 129).

4. The ALJ considered the case *de novo* and, on March 20, 2017, issued a written decision denying Plaintiff's applications for benefits.

5. The Appeals Council granted Plaintiff's request for review and remanded this case to the ALJ to further reevaluate her mental impairments with the special techniques of 20 C.F.R. §§ 404.1520a, 416.920a.  On remand, the ALJ is to provide specific findings and appropriate rationale for assessing Plaintiff's mental functional areas.  (R. at 138-39.)  Further, the Appeals Council ordered the ALJ to evaluate further Plaintiff's symptoms and reconsider her maximum RFC (R. at 139).  The Appeals Council then instructed the ALJ to obtain supplemental evidence from a vocational expert and post revised hypotheticals (R. at 139).

6. On remand on May 8, 2019, the ALJ held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Jay Steinbrenner appeared and testified (R. at 34-57, 10).

7. On June 5, 2019, the ALJ issued a revised written decision denying Plaintiff's applications for benefits (R. at 10).

8. After the Appeals Council denied Plaintiff's request to review the ALJ's second decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's second decision of June 5, 2019, became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

9. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 11, 13.) Plaintiff filed a response on April 20, 2021 (Docket No. 14), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

10. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

11. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

12. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

13. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

14. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

15. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the original or amended onset date (R. at 12, 117). On remand, Plaintiff returned to the original onset date of July 1, 2011 (R. at 12). At Step Two on remand, the ALJ found that Plaintiff has the following severe impairment: bipolar disorder, anxiety disorder with panic attacks, obesity (R. at 12). At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 13-14.

16. Next on remand, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work with non-exertional limitations of doing

5

simple unskilled work; can occasionally interact with the public; and can frequently interact with coworkers and supervisors (R. at 15).

17. At Step Four, the ALJ observed that Plaintiff had no past relevant work. (R. at 19.) At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 20.) Given that Plaintiff's ability to perform work at all exertional levels was compromised by non-exertional limitation, the ALJ posted hypotheticals to the vocational expert for an opinion. The expert opined that a claimant with the same age, education, work experience, and RFC as Plaintiff could perform such jobs as laundry worker, packaging machine tender/operator, and warehouse worker (all medium exertion jobs) (R. at 20). Despite an inconsistency with the Dictionary of Occupational Titles on interaction levels, the ALJ relied upon the expert's education, experience, and Social Security Ruling 85-15 to adopt the expert's opinion (R. at 20). Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 21.)

18. Plaintiff argues that the RFC determination is not supported by substantial evidence because she claims the ALJ did not properly evaluate the opinions of social worker Kim Schepart and consultative evaluator Dr. Christine Ransom (Docket No. 11, Pl. Memo. at 1, 12-18). Plaintiff questions whether the ALJ's findings about Plaintiff's limitations in social interactions were supported by substantial evidence (id. at 1, 18-20). She also argues that the ALJ failed to properly evaluate her subjective complaints (id. at 1, 21-24). For the reasons that follow, this argument is unavailing.

19. Plaintiff compares the opinions of Ms. Schepart and Dr. Ransom, arguing that the ALJ erred in relying upon Dr. Ransom's opinion over that from Ms. Schepart (id.

6

at 12). She believes that the ALJ, in adopting Dr. Ransom's opinion, substituted his lay medical judgment for that of an expert (id.).

20. Ms. Schepart evaluated Plaintiff for the New York State Office of Temporary and Disability Assistance (R. at 1019; Docket No. 11, Pl. Memo. at 15). Ms. Schepart found Plaintiff suffered from bipolar disorder, generalized anxiety disorder, panic disorder, and was hospitalized four to five times since 2007 at Brylin Hospital (R. at 1019-20). Ms. Schepart found Plaintiff was moderately limited in understanding and remembering instructions, carrying out instructions, carrying them out, making simple decisions, maintaining socially appropriate behavior, and interacting with others (R. at 1020, 18).

21. The ALJ, however, gave this opinion reduced weight, accepting the moderate limitations as consistent with medical evidence of record. The ALJ said, "her opinion that the claimant is very limited in maintaining attention and concentration is not consistent with her own records which repeatedly note that the claimant's attention and concentration are 'good.'" (R. at 18, citing R. at 1041-42, 1182-83, 620).

22. Treatment notes from Lakeshore Behavioral and Best Self Behavioral Health between 2013 and 2018 had indications that Plaintiff had good attention and concentration (R. at 620, 1041, 1183; see also R. at 694-95 (June 17, 2016), 706-07 (Sept. 30, 2016)). Ms. Schepart also found Plaintiff's attention and concentration was good (R. at 665-66 (Nov. 12, 2015)).

23. The records cited by Plaintiff from Ms. Schepart did not make any observations as to Plaintiff's attention and concentration (cf. Docket No. 11, Pl. Memo at 15; R. at 661-65, 672-74, 684-85, 693-94, 705-06, 715-16).

7

24. In the same notes from September 21, 2015, that Plaintiff had difficulty committing to regular attendance (Docket No. 11, Pl. Memo. at 15, R. at 661-62), Ms. Schepart observed that Plaintiff's focus improved during that session (R. at 662). Thus, there was substantial evidence supporting the weight given to Ms. Schepart's opinion.

25. The ALJ then gave significant weight to the opinion of Dr. Ransom, observing that her opinion was consistent with Plaintiff's conservative treatment and infrequent and brief hospitalization (R. at 18).

26. Dr. Ransom conducted a consultative examination of Plaintiff in October 2014 and observed Plaintiff's attention and concentration were intact (R. at 430-33, 432, 14, 18). Dr. Ransom noted that Plaintiff could perform activities of daily living (R. at 432). Dr. Ransom then opined that Plaintiff would have no difficulty following and understanding simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learning simple tasks. Dr. Ransom, however, found that Plaintiff would have difficulty performing complex tasks and relate adequately with others and appropriately deal with stress due to bipolar disorder (currently mild). (R. at 432.)

27. Plaintiff argues that the ALJ should have given this consultative evaluation limited weight (Docket No. 11, Pl. Memo. at 16).

28. The ALJ did not err in the weight given to Dr. Ransom's evaluation, resting upon its consistency with the medical record. Plaintiff's objections on this ground are denied.

29.     At Step Two, the ALJ found that Plaintiff had moderate limitation in interacting with others (R. at 14; see Docket No. 11, Pl. Memo. at 18). Again, the RFC found that Plaintiff could occasionally interact with the public and can frequently interact with coworkers and supervisors (R. at 15; see Docket No. 11, Pl. Memo. at 18).

30.     Plaintiff now contends that opinion evidence showed she would have difficulty relating adequately with others (Docket No. 11, Pl. Memo. at 20; R. at 432, 1020, 95). Although the ALJ stated he gave significant weight to Dr. Ransom's opinion, the ALJ erred in not adopting the social interaction limitations (Docket No. 11, Pl. Memo. at 20).

31.     Defendant explains that the jobs identified by the vocational expert here "required no more than occasional contact with the public and 'mostly incidental' contact with coworkers" (Docket No. 13, Def. Memo. at 19; R. at 54). Defendant counters that Dr. Ransom merely found Plaintiff had a mild difficulty relating adequately with others, dealing with stress and had mild social phobia (Docket No. 13, Def. Memo. at 20; R. at 432). Defendant further contends that Plaintiff lost jobs due to outsourcing and not due to health-based inability to work with coworkers or supervisors (Docket No. 13, Def. Memo. at 19).

32.     Plaintiff claims that she cannot be around people and needs a chaperone to go shopping with her (R. at 40, 46, 44, 15; Docket No. 11, Pl. Memo. at 21). The ALJ found, however, that her statements were not entirely consistent with the medical and other evidence in the record (R. at 15).

33.     Defendant responds that Plaintiff's subjective complaints are unsupported by the record (Docket No. 13, Def. Memo. at 21-24). Under Social Security regulations the ALJ appropriately could consider Plaintiff's daily activities to compare the claimed

9

severity of her complaints (id. at 21-23) and the regularity of her attendance at counseling sessions (id. at 23), 20 C.F.R. §§ 404.1529(c)(3)(ii), 416.929(c)(3)(iii), 404.1527(c)(4), 416.927(c)(4).

34. The ALJ has the discretion to reject Plaintiff's subjective complaints but must provide a sufficient rationale to permit meaningful review in rejecting the complaints, Pearson v. Comm'r, No. 19CV6184, 2020 WL 3118473, at *3, 4 (W.D.N.Y. June 12, 2020) (Payson, Mag. J.); Phelps v. Colvin, 20 F. Supp.3d 392, 403 (W.D.N.Y. 2014) (Wolford, J.) (holding that ALJ properly considered Plaintiff's statements pursuant to the regulatory standards) (e.g., Docket No. 11, Pl. Memo. at 22).

35. Here, the ALJ rejected Plaintiff's subjective complaints based upon the assessment of the medical evidence and other evidence in the record. The ALJ then recounts Plaintiff's hospitalizations and her psychological treatment, concluding that her symptoms "wax and wane with her attendance and utilization of counseling" (R. at 17).

36. The ALJ followed the two-step process for determining medically determinable mental impairments, first assessing the medical records to find if would reasonably be expected to produce Plaintiff's pain or other symptoms and, second, evaluating the intensity, persistence, and limiting effects of her symptoms (R. at 15), 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b). The latter evaluation requires assessment of Plaintiff's credibility for her subjective complaints by consideration of Plaintiff's daily activities; the location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken; other treatment received to relieve symptoms; any measures taken by Plaintiff to

relieve symptoms; and other factors concerning functional limitations and restrictions due to the symptoms, id. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

37.	The ALJ here evaluated Plaintiff's subjective complaints by looking at the regulatory factors.  First, the ALJ found Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms (R. at 15), see Phelps, supra, 20 F. Supp.3d at 403.  Second, the ALJ considered Plaintiff's testimony, her daily activities in caring for herself and her child, her hospitalizations, and her counseling sessions and gaps in her attendance (R. at 15-18).

38.	Judge Elizabeth Wolford reminded in Phelps that it is the function of the Commissioner (and not this Court) to resolve evidentiary conflicts or the apprise the credibility of Plaintiff and witnesses, id. (quoting Aponte v. Sec'y Dep't Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (quoting in turn Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

39.	Plaintiff here is asking this Court to reassess the credibility assessment reserved for the Commissioner.

40.	As held in Phelps, supra, 20 F. Supp.3d at 403, the ALJ properly considered Plaintiff's subjective complaints and found them not entirely credibly considering the medical and other evidence, and the ALJ thus did not commit legal error.

41.	Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) therefore is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:    March 1, 2022
          Buffalo, New York

<u>s/William M. Sketny</u>
WILLIAM M. SKRETNY
United States District Judge